UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOHN W. MOORE, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-259-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff John W. Moore, III, (Moore) appearing *pro se*, seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. Both Moore and the Commissioner filed briefs. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.     Standard of Review**

In Social Security appeals, judicial review is limited to (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209

F.3d 448, 452 (5th Cir. 2000) (citations omitted). Under this standard the court is not permitted to reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations and internal quotations omitted.) If it is determined that the Commissioner's decision is supported by substantial evidence and was reached through proper legal standards, the court must affirm the decision. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

**II.     Statement of the Case**

Moore filed an application for DIB on February 20, 2001, alleging that he had not been able to work since June 1, 1986, because of cardiac problems. (Tr. 15, 77, 306.) He subsequently amended his onset date of disability to April 24, 1986. (Tr. 15.) Although Moore filed his application on February 20, 2001, the issue before the Commissioner was whether Moore was disabled on or before December 31, 1989, because his insured status for purposes of DIB eligibility expired on December 31, 1989. (Tr. 15, 63.). A claimant is not entitled to DIB unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing *Ivy v. Sullivan,* 898 F.2d 1045,1048 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of his insured status)); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1).

An Administrative Law Judge (ALJ) held a hearing and issued a decision in which he determined that Moore was not disabled before the expiration of his insured status. (Tr. 15-22.) The Appeals Council denied review, and the ALJ"s decision became the Commissioner's final decision. (Tr. 3-5.)

## III. Discussion of the Commissioner's Decision and Moore's Arguments

The Social Security Regulations require an ALJ to use a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 (2005).[1] The first three steps involve threshold determinations in which the ALJ must determine whether the claimant is not presently working, whether he has an impairment or combination of impairments that is severe, and whether his impairments match the criteria of one of the listed impairments in the regulations.[2] *Id.* In this case, the ALJ found that Moore had not worked in substantial gainful activity since April 24, 1986, the date on which he alleged he became disabled, that he did not have an impairment that matched the criteria of a listed impairment, but that his heart condition constituted a severe impairment. (Tr. 16.) Finding that a claimant has a severe impairment does not mean that the ALJ must find the claimant disabled. Rather, a claimant is found disabled only if the ALJ determines at the fourth and fifth steps of the evaluation process that the claimant's severe impairments prevent him from

---

[1] The Commissioner of Social Security has promulgated regulations that direct the disability determination. These regulations are located in the Code of Federal Regulations, which can be accessed at http://www.gpoaccess.gov/cfr/index.html

[2] The listed impairments, or Listings, set out in 20 C.F.R. pt. 404, subpt. P, app.1, contain over 100 mental and physical medical conditions which are considered to prevent an individual from effectively performing gainful work activity. If the ALJ finds that the claimant's impairments match or equal one of the listed impairments, the claimant is considered disabled and qualifies for benefits. 20 C.F.R. § 404.1520(d).

working. 20 C.F.R. §§ 404.1505(a), 404.1520(e). At these steps, the ALJ must first determine the claimant's residual functional capacity, which is defined as the most the claimant can do, despite his impairments, and then determine whether, based on the claimant's residual functional capacity, the claimant can perform either his past work or other work. 20 C.F.R. § 404.1545(a)(5).

The ALJ who reviewed Moore's claim determined that before the date he was last insured, Moore retained the residual functional capacity to perform a significant range of light work activity. (Tr. 20.) Moore described his past work as "heavy construction" which involved constructing utility pipelines in a business that he owned and operated. (Tr. 69-70.) The ALJ acknowledged that because Moore was capable of performing no more than light work, he was not capable of performing his past work. (Tr. 20.) The ALJ was therefore required to show that Moore was capable of performing other work. 20 C.F.R. § 404.1545(a)(5).

The ALJ turned to the Medical-Vocational Guidelines which are located in the Commissioner's regulations at appendix 2 of part 404, subpart P. Rules listed in the Medical-Vocational Guidelines direct that a claimant is either disabled or not disabled based on the combination of his residual functional capacity, age, education, and previous work experience. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P. app. 2. In this case, the ALJ determined that Rules 202.20-202.22 directed a finding that Moore was not disabled. Under those rules, a claimant who is a "younger individual," between the ages of 18 and 49, as Moore was at the time before his insured status expired

4

(Tr. 304); has at least a high school education; has unskilled, skilled, or semi-skilled skills; and is capable of performing light work is not disabled. 20 C.F.R. pt. 404, subpt. P. app. 2 §§ 202.20-202.22.

### IV. Judicial Review of the Commissioner's Decision and Moore's Arguments

Again, the issue in this case is whether Moore was disabled on or before December 31, 1989, the date on which he was last insured for DIB. The medical records show that Moore suffered a "moderately large" heart attack on April 24, 1986. (Tr. 125-31.) At that time Moore was admitted to a hospital where it was determined that he suffered from arteriosclerotic heart disease and that there was 100 percent occlusion in his left anterior descending artery. (Tr. 129, 131.) Samuel M. King, M.D., a cardiologist, performed a left heart catheterization and evaluative procedures on April 27, 1986. (Tr. 129.)

Approximately six weeks later on June 11, 1986, Dr. King noted that Moore was "doing well" and could "gradually increase activities back to normal" over a period of three to four weeks. (Tr. 121.) He also directed that Moore should discontinue taking Procan after two months but continue taking digitoxin dipyridamole and nitroglycerin tablets and that he should follow-up with another examination in six weeks. (*Id.*)

On December 26, 1986, Dr. King wrote a letter to a supervisor of an insurance policy, which apparently covered the costs of Moore's care. (Tr. 119.) Dr. King reported that Moore had experienced a heart attack in April 1986 and that he last examined Moore in June 1986. He stated that he believed Moore was disabled on August 31, 1986, but that he "should be able to return to some form of activities by October 1986," although he would not

5

be "capable of engaging in all of the normal activities of a person in good health of the same age and sex." (*Id*.)

According to an examination record dated January 19, 1988, Moore did not require further attention for his cardiac condition from Dr. King. (*See* Tr. 117-18; *see specifically* Tr. 118 (Dr. King noting that Moore was last seen in the office on June 11, 1986.)) During the examination on January 19, 1988, Moore reported that his appetite was good and that he did not experience shortness of breath, dizziness, black-outs, edema, headaches, or cough. (Tr. 118.) It was noted on the examination record that Moore's activities included digging ditches for his work. (*Id*.)

Dr. King ordered chest x-rays, an EKG, and a stress test. (Tr. 117.) The x-ray and EKG did not reveal abnormalities that would require medical attention, and Dr. King noted that Moore attained ninety percent of the predicted maximum output during the stress test and exhibited no ischemic changes, ventricular ectopy, or other signs of coronary perfusional abnormalities during exercise. (Tr. 117.) Dr. King stated that Moore was "doing well" and that the findings from the stress test were favorable. He recommended that Moore continue his prescription regime of nitroglycerin tablets and digitoxin dipyridamole and that he follow-up on a yearly basis. (*Id*.)

Notations made by cardiologists in medical records from Methodist Hospital in Lubbock, Texas, indicate that Moore was managed medically and did "reasonably well" after his heart attack in 1986 until December 20, 1992, when he suffered another heart attack. (Tr. 137, 152.) At that time he was admitted to the hospital but refused to undergo an

6

angiogram that a cardiologist recommended and was released upon his request against medical advice. (Tr. 134-35, 152.) In 1996, Moore suffered another heart attack and underwent cardiac catheterization and angioplasty. (Tr. 152.) Thereafter, he suffered two more heart attacks and underwent cardiac catheterization in 1999 and in 2001, angioplasty in 2002, and suffered from the effects of "severe coronary artery disease" during those years and thereafter. (*See, e.g.,* Tr. 17, 193, 210, 229, 287.)

The medical records, including those from Methodist Hospital, establish that Moore became disabled after the expiration of his insured status. The ALJ acknowledged this stating, "I have no doubt that Mr. Moore is currently disabled because of his heart condition." (Tr. 18.) However, the fact that Moore's cardiac condition became disabling after the expiration of Moore's insured status cannot serve as the basis for a finding of disability. *See Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1).

Moore may have became disabled after December 31, 1989, the expiration of his insured status; however, medical records provide substantial evidence to support the ALJ's conclusion that he was not disabled prior to that date. The records show that Moore's heart condition was stabilized and controlled and that he resumed normal activities after his heart attack in 1986. (Tr. 117-19, 137.) The medical records also show that Moore continued to do well until the mid to late 1990's or somewhere near ten years after his first heart attack, before he suffered additional heart attacks and underwent a number of cardiac procedures necessary to maintain his health. (*See, e.g.,* 152, 193, 210, 229, 287.)

Despite the foregoing evidence, Moore contests the ALJ's decision arguing that he suffered from medication side effects that prevented him from working. He contends that Dr. King prescribed medication that made him want to sleep all the time and that caused his temper to flare. He claims that he complained about the side effects and that Dr. King prescribed a different beta-blocker for him, but claims that the medication was in the same family as the first beta-blocker and that he continued to suffer the same side effects. He claims that after his second heart attack, he stopped taking the medication prescribed to him and that he eventually recovered from the effects of the medication.

To support his arguments, Moore submitted additional records generated after the ALJ's hearing. Included in these records is what appears to be an incomplete psychological evaluation completed on August 30, 2002, by Philip J. Davis, Ph.D. (Pl.'s Docs. 1-10.) Dr. Davis noted in his report that Moore's history of cardiovascular disease and the medication he was taking for his condition could "make individuals irritable and appear 'mentally ill.'" (Pl.'s Docs. 5.) Moore contends that Dr. Davis' statement establishes that the medication prescribed for his cardiac condition prevented him from working. He also contends that Cardiology Associates of Lubbock, P.A., the group of physicians with whom Dr. King was associated, destroyed his examination records following his heart attack in April 1986.

Moore's contentions must be rejected. First, the medical records do not show that Moore was prescribed beta-blockers that caused side effects that prevented him from working during the relevant time period. After Moore's heart attack in April 1986, the month

8

in which he claims he became disabled, Dr. King prescribed Procanbid (Procan), an antiarrhythmic drug; dipyridamole, an antiplatelet agent; and nitroglycerin tablets, which act to relax vascular smooth muscle. PHYSICIAN'S DESK REFERENCE 1026-27, 2262-63, 2658-59 (56th ed. 2002). None of these medications is a beta-blocker and none of them cause the side effects that Moore claims prevented him from working. *Id*. Although cardiologists prescribed beta-blockers to treat Moore's cardiac condition in 2002 and 2003 (*See* Pl.'s Docs. 104, 178), these medications were not prescribed before Moore's insured status expired on December 31, 1989, (Tr. 121).

In regard to Moore's contention that Cardiology Associates, P.A., destroyed his examination records, the association may have destroyed the records after the ALJ issued his decision. However, Cardiology Associates, P.A., submitted records generated between April 24, 1980, and April 19, 1999, to the Social Security Administration in 2001, and those records are included in the administrative record. (*See* Tr. 78-205). Those records and other records in the administrative file appear complete and provide substantial evidence to support the ALJ's decision.

## V. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Moore's appeal with prejudice.

## VI. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written

objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   March 27, 2006.

NANCY M. KOENIG
United States Magistrate Judge